Our first case this morning is Vistaprint Technologies, Mr. Gregson. Good morning, your honors, may it please the court. With the court's indulgence, I would like to spend a few sentences setting the context for the invention and then I'll get right to what we think are the board's errors here. The real party of interest here is Vistaprint. Vistaprint is a company that provides services so that people can print large posters and banners and business cards and things like that conveniently. Its goal is really to provide high-end printing without all the hassle of high-end and that's what these patents are about. These things were filed in 1997 back when the web was still pretty young and browsers were fairly basic. The goal here was to provide an easy mechanism so that somebody could put together a big banner for their small business and have it come out right. So the idea was to do it through a web browser and to download this authoring component or authoring program or parts of it anyway to the browser, allow the person to do all of their work at their web browser, they didn't have to buy a thousand dollar desktop publishing, and then send the file back up, for example, to Vistaprint servers. We've looked at this technology a bit. You're going to get us very quickly to this teaching away reference, I'm sure. And it says Coriell has a facility that is immediately publishable to the printer, no conversion or reformatting is required. That's certainly true when you're just using Corell, but what happens if you move to another PDL? You know, what if you were moving through a series of different formats? Wouldn't that have... It seems to me it's not teaching away when it doesn't address what our situation is. So say the answer is no and we address this. This is not something that the board handled. They just said this, well, in the event that, but it is something that the solicitor brought up, is this multi-format environment idea, which I think you're getting at. So for example, you're in a system... And it doesn't seem to teach away when it doesn't address the topic, is my question. How can it teach away when it doesn't address moving from one PDL to another? So it does address that, and I'll show you how. So if you look at our reply brief, we explained what you would do in that situation. So my favorite example of this multi-format environment, what I think they had in mind is you've got Microsoft Office and you've got this Corel thing on your desk. And somebody sends you, you're working with another law firm and they send you a Word document. What do you do? And as we explained, what do you do? You convert it when you open the document. These are what you see is what you get programmed. You want to know what it's going to look like on your desktop. So when you look at it, you see it in your format, in the format that works with Corel. Now, is that just me making it up? No. If you look at A17249, which if you just had the Corel document up, you just flip the page one, page over, two pages, and bottom of 7248, actually. The Corel document says, well, what happens? Will my Office for Java be able to read Word and WordPerfect documents? That's your multi-format environment. And you get up to the top of the next page. It says, yeah, it's very important to provide access to legacy documents. So yes, import and export filters will be provided in Corel Office for Java on the server level. So when you open up the document, you import. If you have Word, you can see how that works too. When you click on something that isn't a Word file, it says, do you want to open this text file as a Word file? That's what the importing and exporting is. And that makes perfect sense because you want to see what the document is going to look like. You don't wait until you print it to invert it. Now, I'm having a little trouble here because I need, rather than your argument as to what is being taught, I need experts and declarations and people of skill in the art rather than attorney argument guiding me through this technology. And leading me to a conclusion that's obvious or not. So two points on that. You need evidence. It can be declarations. It can be experts. But we have evidence right here in 17248 and 249 of what Corel was teaching. And I think it's pretty plain. I don't think that it's open to interpretation to say, well, that means convert at print time. That's number one. Number two is the prima facie burden here is on the board and on the office. So to the extent we don't have explanation for this, and we don't, in the board opinion we have a statement of, in the event that you wanted to convert, you can use Furman to convert. And that's it. And that's backfilling. There's no evidence to support that. In fact, there was no event when you wanted to convert, at least under what the board was considering. We add the idea of this multi-format environment that the solicitor brings up, and this is our response to it. So the board itself didn't bring in any evidence. So the prima facie case wasn't met. Now, that's the first problem we say is that it's assumption, which has no evidentiary support, that in Corel you would have some event that requires conversion. We say that's not supported by evidence. They just threw that out there on page six of the appendix. That's problem number one. And then problem number two is the teaching away. So we think they've missed their prima facie on problem number one, and that we actually rebut it on problem number two. But DistroPrint doesn't contest that Furman teaches translation, right? It teaches in part. It teaches both translation when you need translation, and no translation when you don't need translation. So it does have translation, but if you put them together, you'd go down the route of Furman that says, well, we have this common format from Corel, so we're going to use the Furman route that doesn't translate. So it teaches both of those things. So it teaches that, in fact, there are some instances where you would translate, and some where you would not. Corel is an instance where you don't need to translate at the print stage, but what the board is saying is that you put the two together, and one of skill in the art would easily understand that if you wanted to translate, you could. It has to be translated at print time, and that statement by the board doesn't have any evidence because Corel doesn't have translation at print time. It doesn't need it. But Furman does. Furman has that. So if we affirm the board's conclusion that a person of ordinary skill in the art would combine the two, doesn't that end the case and render them obvious? No, you have to combine the teaching of Furman to translate, not just combine the references, but you have to take the route of Furman that says translate, and you can't do that because there's no need for translation. Why do you have to take that? Well, because our claim requires translation. I think I'm going to re-ask the question that Judge O'Malley asked again, which is wouldn't one of skill in the art know you take that path if you need it, or you have an alternative path. I think I'm just restating Judge O'Malley's question, really. The problem is the premise of Furman for translation isn't in the Corel reference. But that's why you need to combine the two. I mean, if it was in Corel, it wouldn't be obviousness. It would be anticipation. Right, but Corel, if you look at Furman, they talk about DOS-based files, and they say if it's a DOS-based file, you don't convert. If it's some other PDL file, you do convert. And so if you took the analogy into Corel, in Corel, you have the Corel file. That is the DOS file from Furman. It's the one that you wouldn't convert because there is no multiple different types of files. So Furman has two routes to go. If you have a single format, Furman just leaves it alone. If it's in the right format, Furman leaves it alone. If it's in the wrong format, not wrong, but the one that's not the standard Furman format, then Furman converts. But in Corel, there is only one format. You wouldn't convert because you're already in that one format. But you don't need Corel for the conversion part. You need Corel for the part about uploading and doing everything and getting a pre-pressed document. It's Furman you need for the translation part. Correct. But you can't just take the translation of Furman to a reference that doesn't need translation. Isn't that the whole point of combining two references? You need some reason to go get the second reference. If you're the skilled artisan sitting in a room with Corel, you're kind of fat, dumb, and happy when it comes to printing. You've got this solution that Corel came up with that solved your printing problems. You don't need conversion. So you'd never go and reach out to Furman. That's the whole point about reason to combine. There would be no reason to go get Furman. Suppose you're working with Corel. I'm not going to say this right, but the teaching of Corel isn't just for the Corel-specific thing. It's for this process of printing and editing files. So it covers more than just the Corel product and the Java-based product. Right. So if you have some other thing that's covered by that that does require translation, why wouldn't you normally – if you have this product and you say, well, Corel may only not require translation, but this other thing does, Furman teaches us how to do that. Because what Corel teaches you is you do the translation with the filters when you import the document. Because it frustrates the purpose of Corel to have this benefit of not having to do the printer-time translation. So Corel does it in a way that is common. It's a web-based – the reason that Corel does this is it's a WYSIWYG. So you want to know before you go to print what this document looks like. You don't want to wait to convert. But didn't the – if I'm remembering the board opinion correctly and the examiner, didn't they give us three reasons that one would make that combination? I don't – not in my understanding. Flexibility was one of them. I think that's from the solicitor. Pulling it up here. Age 5 and 6 is really where their analysis is. Yes, provide flexibility in communicating and common elements of the shared resource will be combined in a known manner and less restrictive printing functions and features. Isn't that good enough? No. Two reasons. Number one, Corel doesn't need the less restrictive printing functions because it does its conversion when you open the document. So they're not providing anything for Corel with – they say it's greater flexibility, but it doesn't provide anything to Corel because Corel doesn't need that flexibility. It converts the document when it opens the document. So it has no need for it. There would be no need to go get that. They say, well, in the event that you needed to do that, but there is no need to do that. That's the problem. They're back-filling to Corel saying that there's a problem that isn't in Corel. Corel avoids that problem of print time conversion because it does conversion when you open. But they say, well, in the event that you had to do print time conversion with Corel, Furman fixes it. There's no problem to be fixed. What if you were in – not necessarily in Corel, but in another operating system, the Microsoft operating system? We're not trying to – And now you, of course, both covered by the claims, both Corel and the Microsoft system, and now you're out of the reliance on the Corel, aren't you? You wouldn't have the problem because that's the whole point of how web browsers work is they're platform independent. So when you load a web page, you don't get an Apple web page. You don't get a Microsoft web page. You don't get a Linux web page. The whole point of having HTML and web browsers is to be platform independent. You see reference in the Corel document to your – they say in their Q&A, well, you guys are a platform independent system. So in your example of Microsoft, it would still be the same thing because you're inside the browser. It's this Corel document that's in the browser, and it doesn't matter if you're on an Apple, a Microsoft, or anything else. In essence, you say the three reasons given to combine the motivations are insufficient, but that's just you saying it. Do we have anything in the record, any expert who says, oh, no, no one of ordinary skill in this art would ever do that? So I don't say they're insufficient. I say they're not supported by any evidence. They haven't pointed to the eventuality that in the event that to support that that event would occur. In fact, we point to evidence in the reference itself, in Corel, that that event wouldn't occur, the event being that you would need translation at print time. So it's not a question of whether their motivations that they have or that they state in their brief are good or not. It's that those aren't in the record anywhere, that they're backfilling for evidence that's not there, and that it runs contrary to the statement in Corel about not needing to do the print time conversion. It's very important also the board never addressed that sentence, not once. We highlighted it multiple times, literally highlighted it. You can look at in our reply brief, if you look at the slides that we used at the oral hearing, on page A190, we brought just that passage out and highlighted it. And then at 198 and 199 in our rehearing, we quoted that same passage again in our request for rehearing. And we said, you missed this passage. You need to deal with this passage. Mr. Dragseth, your time's expired. Thank you. We'll restore three minutes of rebuttal time for Mr. Dragseth and give Mr. Foreman an extra three if he needs it. All right. Mr. Foreman. Thank you. May it please the court. This case centers on whether a skilled artisan would have had a reason to combine a computerized pre-press system as taught by Corel with document translation as taught by Foreman. Because the board's factual findings are supported by substantial evidence, this court should affirm. But the Corel reference says flat out, no conversion required. Yes. It says you don't need to go anyplace else. So why would one ever go to Foreman? Well, I think that one of the main problems with Vistaprint's argument that goes to this point is that Corel just teaches one implementation of a computerized pre-press system done in the Java environment. There are lots of other different ways, different software, different platform, different environments that one could use, and a skilled artisan would know that. So if a skilled artisan was seeking to implement a computerized pre-press system in some other environment or software program other than Java, translation may be necessary as shown by Foreman. So while this specific implementation of Corel highlights the fact that no conversion is necessary, that may not always be the case in another software platform. But the law is pretty clear that known elements being out there is not enough, and you need to have some motivation to combine the two. If you have Corel, which is a self-contained system, there's no reason to go outside of it. That's the whole point of Corel, correct? Well, I think that first the examiner provided multiple reasons to combine, and it went to the flexibility and increased capabilities of translation in a network printing environment. I think that you would want to go outside Corel, even though if you were going to implement the exact system of Corel, exactly the way that's taught in the reference, I agree that you wouldn't have a need to do conversion. But if you're going to change it in any way, maybe do it in another software platform, then there could be a reason to change it. One of skill and the art wouldn't be necessarily tied down to the exact specifics of Corel. He or she could look at Corel and see it for what it's teaching in a broader sense. It's teaching the ability to have an online system where you download the authoring program from a server to a client, and then the user creates the document and sends it back to a server for printing. That's really the broader teaching of Corel. It's not limited to this specific Java-based implementation. I think that the second problem with Vistaprint's argument, and Judge Hughes hit on this, is that Vistaprint's saying that Corel needed to show some suggestion of translation.  It would have been an anticipatory reference, and we wouldn't be dealing with obviousness at all. What's your response to your friend on the other side when he says that there are very specific portions of Corel that the board just simply ignored? I don't think that's the case. First of all, the Q&A that counsel highlights isn't even part of the specific Corel white paper document that was at issue before the board. In addition, this argument that... So that was never presented to the board? It was. It was presented as a different document. If you look at... So it was before the board. It was before the board. I agree. I think the issue is that Vistaprint's now saying that a multi-format environment would require translation at the screen versus at the printer. And giving the example, if you tried to open up a WordPerfect document in Word, a PDF document in Word, for example, the translation would happen right on the screen. But Furman itself teaches translation at the print server, and that's what the claim requires. And so we have that specific teaching of translation at the print server, and the reason you do that is if you're running, for example, as Furman describes, you're running a Mac hooked up in a network that has a print server that's running DOS. In that example, you would create your document on the Mac. You wouldn't have to do any translation. But then when the document is sent from the Mac to the DOS print server, translation would be necessary for it to be compatible. That's where translation comes in, and that's where the translation of the server comes in. I get your argument about the combination and the motivation that an ordinary person in the art would combine these. What I'm struggling with is what specific evidence in the record the board points to to support that. I looked at the board's opinion at page 6 and 7, and it kind of explains its reasoning, but I don't see any specific kind of citation to the record or experts or anything like that. I agree the board decision is brief on this point, but if you look at what the examiner said, the examiner fleshes out more. For example, on page A261, the examiner provides these three reasons to combine that we were discussing earlier and provides citations to firm where you can find these. So there is a stated reason to combine in the record, and there is record evidence to support that reason to combine. You would agree, though, that Correll expressly says there's no need for translation at printing, and it's got the import and export servers that do the translation at the time that the program is opened and downloaded, right? That's only a specific example of if you're trying to open up a Word document in Correll, the translation has to happen at printing. And that's the only limited reference to translation in Correll, and Correll makes it clear that the whole point of Correll is no translation at the printing stage. I wouldn't say it's the whole point of the reference. I think it's one feature of the reference. I mean, the whole point of the reference is to provide this online document creation office productivity software. Right, meaning what you see is what you get. So this comes out exactly as it's on your screen with nothing messing with it in between. Correct. So you know you push that button, and then it's going to come out looking exactly like that because there is no translation. Well, no. I think that translation or no translation, the end user's going to see the exact same result. The point of translation is to get you to a what you see is what you get situation. So the end user's going to hit print, and the document's going to be printed, and it's going to look like it looks on the screen whether or not you have, I mean, if you're in the single format environment, no translation will be necessary. If you're in a multi-format environment, translation will be necessary for the specific reason to get the document to look like what it looks like on the screen. So it's really just two different ways to get to the same result. So, let me make sure I understand what I think your argument is. It's essentially that the important teaching of Corel is this whole pre-press thing, and what shows up on the screen is what's going to be printed. And in the Corel reference, it does that because there's no translation required. But somebody of ordinary skill would look at Corel's process of having it look like it is on the screen printing and say, well, we can make it even more flexible and cover more systems if we combine it with Furman's translation. Correct. And the translation is for the specific purpose of ending up with a what you see is what you get situation. Finally, I'd just like to address Vistaprint's argument regarding standard review. Vistaprint claims in its reply brief that this case should have a de novo standard review, but really the two issues in this case are motivation to combine and teaching away, both of which are factual issues, both of which are reviewed for substantial evidence. So I think those are the issues that are in dispute between the parties. Those are the issues that the court needs to focus on. Is there something further? Thank you, Mr. Furman. Mr. Draxler, you scored three minutes. Quickly, I looked back through the board's opinion. I don't see three reasons. That's from the examiner. That's from the examiner, and we don't review the examiner. I don't think the board really adopted those, did it not? No, there's nothing in the opinion that shows that the board adopted that. There's only one paragraph in the board's opinion that has the analysis, and it just says, in the event that... Everything else is in their brief, maybe in the examiner, but the court doesn't review the examiner. The court reviews the board. Chenery Doctrine requires the court to limit its consideration on the same basis that the board used, and the only indication we have is on A6 of the appendix. That's for the 011 patent. The same thing is stated for the 357 patent. Why didn't you put a declaration in that explains what one of the skill in the art would have understood from these references? You know, at the time, there were other issues in, and we put a declaration. We felt the pre-press was an important distinction, and so the declaration of our expert team focused on the pre-press issue. Still think that's good, just not a good issue to take up on appeal, because it brought a reasonable interpretation, but I can't tell you why a decision wasn't made. I think, you know, it's clear from what the document says. I haven't heard any... And this goes to the standard of review point, too. I haven't heard any argument being a disagreement over what is being taught in these references, and that's why this is legal review. The statement is clearly a teaching away. There's not a dispute in this case about technically what's going on, right? It's a dispute about legally what is the implication of that, and so I believe... I wasn't part of the team at the time, but I think what they looked at is that we have some clear statements, and they made those arguments off the evidentiary record, or off of the paper record, instead of adding a declaration. I think the example, the MACDAS example, is classic hindsight, and the idea of, well, we'd go get this extra thing to provide even more flexibility. The flexibility isn't needed, and in fact... I'll aim the court back to 249, or 17249 of the record, and this is the platform independent statement in Correll. The question says, you say Correll Office for Java is platform independent, but it isn't working on my platform. What's up? And then they go on to say that the number of supported operating systems and browsers increases almost daily, and includes Sun Solaris, AIX, which is an IBM operating system, OS2, which is dead now too, Windows 95, Windows NT, and Macintosh. So the Sun system itself says, we're working on all of those operating systems. And the way that they do that is through the filters, and they don't need translation. That's what this reference says. We are in a multi, not multi-format, in a multi-operating system environment, in a heterogeneous environment, and what we're doing is avoiding print time translation, even in this heterogeneous environment. So the concept that the solicitor provides, that you'd have this heterogeneous environment, and all of a sudden have this need for translation at print time, not only lacks support, but it's contrary to what is said right in the record itself. Thank you. Thank you, Mr. Dragset. Our next case is...